DONALD E. YOUNG, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 22294

RONALD J. PIERSON, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 22296

BOYD ALLEN CAMPER, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 22403

TODD A. OSTLER, APPELLANT, v. THE STATE OF NEVADA, RESPONDENT.

No. 22529

March 24, 1993                                     849 P.2d 336

---

[9]THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this appeal.

[10]THE HONORABLE CHARLES E. SPRINGER, Justice, appointed THE HONORABLE DAVID ZENOFF, Senior Justice, to sit in place of THE HONORABLE JOHN C. MOWBRAY, Justice.

[Rehearing denied July 7, 1993, Docket No. 22403]

*James J. Jackson*, State Public Defender, *James P. Logan*, Deputy State Public Defender, Carson City, for Appellants Ronald J. Pierson and Todd A. Ostler.

*Mark E. Haines*, Carson City, for Appellant Boyd Allen Camper.

*Claassen & Olson*, Carson City, for Appellant Donald E. Young.

*Frankie Sue Del Papa*, Attorney General, Carson City; *Noel S. Waters*, District Attorney, Carson City, for Respondent.

## OPINION

*Per Curiam:*

During a court-authorized surveillance of a public restroom at Mills Park, the Carson City Sheriff's Department captured appellants Ronald J. Pierson, Donald E. Young, Todd A. Ostler and Boyd A. Camper on videotape engaging in acts of masturbation and/or oral copulation. Separate bench trials were conducted for each of the four appellants. The district court denied appellants' pre-trial motions to suppress the videotapes and all evidence derived from the surveillance. Appellants were convicted of one or more counts of open or gross lewdness and/or indecent or obscene exposure.

On appeal, appellants challenge the district court's denial of their motions to suppress and contend that their conduct did not constitute indecent or obscene exposure and/or open or gross lewdness. Discerning no error below, we affirm.

### FACTS

The conduct ultimately leading to the arrest and conviction of each of the appellants occurred in a public lavatory at Mills Park in Carson City, Nevada. On or about August 29, 1990, Park Ranger Arley Richardson complained to the Carson City Sheriff's Department that homosexual activities were believed to be occurring in the men's restrooms. Richardson related to Detectives Dan Holub and Steve Albertsen that several park visitors had complained of the homosexual activities and he was informed and believed that such activity had been going on for at least a year. Richardson personally observed certain males frequenting the park on a "more than regular basis." The individuals would often

visit the men's restroom multiple times over the course of a lunch hour, and often after work hours, entering together or meeting inside.

Richardson also observed messages on the restroom walls inviting others to meet at the restroom to engage in homosexual activity. The restroom in which the offenses occurred is approximately ten feet wide and fifteen feet long, with a door at the entry which is "locked open" with a deadbolt. Upon entering in an easterly direction, there are two wash basins and two urinals on the south wall. A metal partition separates the basin-urinal area from two commodes. The commodes are on the south wall facing north and are further separated by a partition. Although both stalls are doorless, one cannot see into the stalls from the entrance or the basin/urinal area. The partitions are partial, estimated to be approximately two feet off the ground and extending upward about six feet. The partial partitions allow anyone entering the restroom to see under the partition to determine whether the stalls are occupied.

A small hole had been made in the partition closest to the entry (near the urinal), at about eye level to persons seated on the commode, allowing observation of anyone entering the facility. A larger hole, about six to eight inches in diameter, was made in the partition separating the stalls.

The detectives' initial visual surveillance of the park area surrounding the restrooms corroborated Richardson's account. They, too, observed messages written on the restroom walls indicating the desire to meet men between the ages of 18 and 30 for the purpose of engaging in oral copulation and other homosexual acts. Holub observed men seated in the adjoining stalls talking through the hole in the partition. On several occasions, Holub saw men sitting side-by-side in the adjoining stalls with their hands over their genitals and their shirttails over their hands. However, the detectives were unable to observe any individual engaging in criminal activity.

The efforts of the two detectives and Richardson to curtail the activity was futile since they could be seen and heard approaching the stalls, thus enabling the individuals to discontinue their activities and elude detection.

Consequently, the detectives sought an order authorizing surreptitious surveillance. The officers opined that surreptitious surveillance of the restroom's interior would be more effective in both discouraging and apprehending the individuals suspected of engaging in criminal behavior. Detective Holub submitted an oral affidavit to Justice of the Peace Robey Willis on September 11, 1990, wherein he related the foregoing facts. Satisfied that there was probable cause to believe that evidence of open or gross

lewdness, indecent or obscene exposure and/or vagrancy could be found in the public men's room at Mills Park, Judge Willis signed the order authorizing visual surveillance.

The surveillance order authorized the officers to:

> [E]stablish a point of surreptitious surveillance upon the above-described men's restroom facility by creating a hole or holes in the restroom wall dividing the men's restroom from the adjoining maintenance room, whereby from the maintenance room said law enforcement officers may clearly observe and/or photograph the activities occurring within the restroom which are the subject of this criminal investigation.

The surveillance was limited to ten days, beginning on September 11, 1990, and expiring on September 21, 1990. Surveillance was to be conducted by Carson City Sheriff's deputies from 7:00 a.m. to 7:00 p.m.[1] The officers were also ordered to file a surveillance report with the court.

Armed with the surveillance order, Albertsen and Holub proceeded to surveil the men's room. The officers set up a monitor and video equipment in a maintenance room separating the men's and women's restrooms. A miniature camera was installed in a metal alarm box with a grate-type bottom located above the two stalls over the partition.[2] The camera was connected to a monitor and a video cassette recorder. While the monitoring was constant, taping would occur only when the officer observed criminal conduct. The surreptitious surveillance proved effective, revealing approximately twenty individuals, including appellants, engaging in acts of masturbation and/or oral copulation in the Mills Park men's restroom. Appellants were observed and charged as follows:

*Appellant Boyd Camper (22403)*—On September 20, 1990, Camper was observed masturbating while peeking through a hole in the toilet stall, for which he was charged with open and indecent exposure. On September 24, 1990, he was observed masturbating while watching one Ronald Dowler masturbate, and

---

[1] Surveillance under the original order continued until September 21, 1990. At that time, Judge Willis, upon oral affidavit by Detective Holub describing the activities observed during video surveillance, extended the period of surveillance to October 1, 1990, and expanded the time of surveillance to 10:00 p.m.

[2] Detective Holub testified that they abandoned observation through holes in the walls as originally contemplated because the location of the holes near the commode precluded them from seeing anything other than an individual's back. This was ineffectual inasmuch as most of the activity occurred "right on the toilet."

then allowing Dowler to copulate him. As a result, Camper was charged with gross lewdness.

*Appellant Donald Young (22294)*—Young was observed masturbating while peeking through the peephole in the partition and masturbating while watching another masturbate. On the latter occasion, Young and the other male were observed with their pants down in front of the stalls in view of anyone entering the restroom. These events occurred on September 19 and 20, 1990, and were the basis of two counts of gross lewdness and one count of open and indecent exposure.

*Appellant Ronald J. Pierson (22296)*—On September 24, 1990, Pierson was observed in the doorless stall performing an act of oral copulation on Thomas Crouch. On the following day, Pierson was seen masturbating while watching Ronald Dowler masturbate. Pierson was charged with two counts of gross lewdness.

*Appellant Todd A. Ostler (22529)*—On September 19, 1990, Ostler was observed masturbating in the doorless stall while peeking through a hole in the partition. He was charged with one count of open and indecent exposure.

At their respective bench trials, appellants sought to suppress the videotapes and any other evidence garnered through the surreptitious surveillance. Appellants argued that their Fourth Amendment rights were violated by the surveillance because they had a reasonable expectation of privacy in the Mills Park men's restroom. They also challenged the validity of the order authorizing the surveillance. All motions were denied.

Camper was convicted of open or gross lewdness and sentenced to six months in jail. His sentence was suspended and Camper was placed on probation for up to three years. Young was convicted of two counts of gross lewdness, one count of open and indecent exposure and one count of vagrancy. He was given four six-month jail terms, all to run concurrently. The sentences were suspended and Young was placed on probation for up to three years. Pierson was convicted of two counts of gross lewdness. He was sentenced to nine months in the county jail. The sentences were suspended and Pierson was placed on probation for a period not to exceed two years. Ostler was convicted of one count of open and indecent exposure and fined $1,000. In addition, all appellants were ordered to pay $250 in restitution to the Carson City Sheriff's Department.

## DISCUSSION

### 1. *Fourth Amendment Challenge*

Appellants contend that their expectation of privacy in a public

restroom was reasonable notwithstanding that the restroom was located in a public park and the stalls were doorless. Relying on *Katz v. United States*, 389 U.S. 347 (1967), appellants argue that the stalls were temporary private places where they had reasonable expectations of privacy from surreptitious police surveillance.

In light of the location and nature of appellants' conduct, we reject appellants' contention and hold that appellants' expectations of privacy were neither subjectively nor objectively reasonable.

Under *Katz*, the mere occupation of a public place (there, a phone booth) does not render an individual's expectation of privacy unreasonable. What an individual "seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." *Katz*, 389 U.S. at 351-52 (citations omitted). However, "[w]hat a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection." *Id.* at 351 (citations omitted).

Whether appellants were entitled to the protection of the Fourth Amendment depends on whether they harbored both a subjective and objective expectation of privacy. *Katz*, 389 U.S. at 361 (Harlan, J., concurring). A subjective expectation of privacy is exhibited by conduct which shields an individual's activities from public scrutiny. *Id.* In *Katz*, the critical fact for the court in determining that the defendant had a subjective expectation of privacy was that he "shut the [phone booth] door behind him." By so doing, Katz excluded the public and was entitled to assume his conversation was not being intercepted. *Id.*

However, an individual is not cloaked with Fourth Amendment protection simply by taking steps to conceal his activities. An objective expectation of privacy, i.e., one which society recognizes as reasonable, must also exist. *Id.*, 389 U.S. at 361; *see also*, *Oliver v. United States*, 466 U.S. 170 (1983). "The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government intrusion infringes upon personal and societal values protected by the Fourth Amendment." *Oliver*, 466 U.S. at 182-183. In determining whether a reasonable expectation of privacy exists, the Court has considered such factors as "the intention of the Framers of the Fourth Amendment (citation omitted), the uses to which the individual has put a location (citation omitted), and our societal understanding that certain areas deserve the most scrupulous protection from government invasion (citation omitted)." *Oliver*, 466 U.S. at 178.

Applying the foregoing principles to "public restroom" cases, courts have reached diverse conclusions. Among the determining factors are the design of the stalls (i.e., whether equipped with doors) and the method of the officer's observations (i.e., whether clandestine or "plain view").

In cases where the stall is equipped with doors and the surveillance is clandestine, some courts have found that an expectation of privacy is reasonable and an individual occupying the stall is entitled to be free from clandestine police surveillance of activities occurring within those stalls. *See* People v. Dezak, 308 N.W.2d 652 (Mich.Ct.App. 1981), and People v. Kalchik, 407 N.W.2d 627 (Mich.Ct.App. 1987). Other courts have held that clandestine observation into a public restroom stall, regardless of its design, is violative of an individual's reasonable expectation of privacy. *See* People v. Triggs, 506 P.2d 232 (Cal. 1973), and Kroehler v. Scott, 391 F.Supp. 1114 (E.D.Pa. 1975). The concerns expressed by these courts is that it "permit[s] spying on the 'innocent and guilty alike.'" *Triggs,* 506 P.2d at 236.

Still other courts have focused on the stall design and held, notwithstanding clandestine police surveillance, that no reasonable expectation of privacy exists where criminal activities are being conducted in a public restroom. *See* Buchanan v. State, 471 S.W.2d 401 (Tex.Crim.App. 1971), *cert. denied,* 405 U.S. 930 (1972).

In *Buchanan,* officers in concealed positions observed defendants engaging in sodomy inside a park restroom within a doorless stall. In concluding that the defendant's expectation of privacy was not reasonable, the Texas court reasoned:

> A toilet stall in a public restroom is private to the extent it is offered to the public for private, however transient, individual use. (Citation omitted.) The occupants are entitled to the modicum of privacy its design affords. (Citation omitted.) Where, however, the design is such that there is no right to expect privacy there can be no invasion of privacy . . . . The commode stalls in Reverchon Park had no doors and were visible to all in the general restroom area. In such a design there is no reasonable expectation of privacy from viewers. (Citation omitted.) Hence, while the method of the alleged clandestine surveillance was identical in each instance [with door and without], the appellant's expectation of privacy under the circumstances was not reasonable where no doors were provided for the stalls.

*Id.,* 471 S.W.2d at 404. *Compare* Smayda v. United States, 352 F.2d 251 (9th Cir. 1965), *cert denied,* 382 U.S. 981 (1966). The *Smayda* court upheld the clandestine surveillance of a toilet stall

with doors where the officers had probable cause to believe the stalls were being used for homosexual activities. Surveillance of the stalls was accomplished through holes above the toilet stalls. The stalls had doors but could not be locked from the inside.

The *Smayda* decision recognized that persons using stalls in a public restroom would expect some right to exclusive occupancy, however temporary. However, the court circumscribed the right with qualifications pertaining to such factors as the condition of the stall, including the spaces above and below the partition, the holes in the partitions and even holes in the ceiling. The *Smayda* court, in a fact-specific ruling, concluded that when people use a public toilet for criminal purposes "they deliberately take the chance that they may be observed by police officers, and that they are not protected from such observation, whether clandestine or otherwise," simply because they use the toilet stall. *Id.* 352 F.2d at 254.

Key to the court's determination was not whether the stall had a door, but that the defendants' activities could be seen by any member of the public who looked under the stall or peered over the door. *Smayda,* 352 F.2d at 255. Moreover, the court was unconcerned about the clandestine nature of the officer's surveillance. In that regard, the court stated that "[b]y using a public place appellants risked observation, and they have no constitutional right to demand that such observation be made only by one whom they could see." *Id.*

The *Smayda* court's reasoning continues to be relied upon by courts, post-*Katz,* for the proposition that clandestine surveillance undertaken by police officers in order to observe criminal activity does not violate the Fourth Amendment where the activity can be observed by the public. *See* State v. Jarrell, 211 S.E.2d 837, 840 (N.C.Ct.App.), *cert. denied* and *appeal dism'd,* 213 S.E.2d 724 (N.C. 1975) (police concealed in space above ceiling observed defendants engaging in sodomy in common area of public restroom); *cf.* United States v. Fisch, 474 F.2d 1071, 1077 (9th Cir.), *cert. denied,* 412 U.S. 921 (1973) (officers overheard conversations in adjoining motel room; no expectation of privacy since conversation could have been heard by any member of the public). These courts, like the *Smayda* court, reason that by using a public place for criminal activities, defendants risk observation, having no reasonable expectation of privacy. *Jarrell,* 211 S.E.2d at 840.

This reasoning is sound and consistent with *Katz* and its progeny. As noted previously, Fourth Amendment protection is not afforded to activities which a person knowingly exposes to the

public. *Katz,* 389 U.S. at 351. The appellants here, unlike the defendant in *Katz,* were unable to exclude the public simply by retreating into the doorless stalls.

Appellants' activities could be observed over or under the partitions and through holes in the partitions. Appellants' behavior was such that anyone entering the restroom could see that they were not using the facilities in a customary manner. In particular, Pierson and another male occupied one stall to engage in copulation. Young and another male were observed in front of the stall with their pants down. Camper, while in the easternmost stall, placed his genitals through the hole in the partition, allowing the male in the westernmost stall to copulate him. By engaging in these activities, appellants could not reasonably argue that they harbored a subjective expectation of privacy.

Moreover, no objective expectation of privacy can be said to exist under these circumstances. We are unconvinced that society is prepared to recognize as reasonable an expectation of privacy of persons engaging in sexual acts in a public park restroom with doorless stalls. *See* State v. Johnson, 536 N.E.2d 648, 650 (Ohio Ct.App. 1987). The reasonable expectation of privacy in a public restroom is strongest when an individual uses the facilities for their intended and customary purposes while enclosed in a stall. However, that expectation necessarily diminishes when the facility lacks any real enclosure, thus exposing the user to view, whether intentional or inadvertent. State v. Berber, 740 P.2d 863, 868 (Wash.Ct.App. 1987).

By engaging in sexual activity in the doorless stalls of a public park restroom, appellants' expectation of privacy was unreasonable. Appellants' conduct, as described above, could not be completely shielded from view. The mere fact that they attempted to conceal their activities from the authorities is insufficient to cloak appellants with Fourth Amendment protection. *See Oliver,* 466 U.S. at 182-83.

For the reasons discussed above, we conclude that appellants had no reasonable expectation of privacy in the doorless toilet stalls in the public restroom at Mills Park and that their motions to suppress evidence of the surveillance were properly denied. Our resolution of this issue renders it unnecessary for us to address appellants' contentions with respect to the validity of the surveillance order.

2. *Open or Gross Lewdness and/or Indecent or Obscene Exposure.*

Appellants were convicted under NRS 201.210 (Open or Gross

Lewdness) and 201.220 (Indecent or Obscene Exposure). Appellants challenge their convictions on the premise that masturbation and oral copulation in a public restroom do not constitute open or gross lewdness or indecent or obscene exposure because (1) they were not observed by anyone and (2) they did not intend to offend anyone. Appellants rely on Ranson v. State, 99 Nev. 766, 670 P.2d 574 (1983), wherein we concluded that lewd acts done in a private residence in an open, nonsecretive manner, "clearly intending that [the perpetrator's] acts be offensive to his victim," fell within the ambit of the open lewdness statute. *Id.* 99 Nev. at 767-68, 670 P.2d at 575.

Appellants' reliance on *Ranson* is misplaced. In *Ranson,* the defendant committed illicit sexual acts within the confines of a private residence. Thus, it was necessary to consider whether the acts were done openly in order to be punishable under the statute. Here, the sexual conduct engaged in by appellants occurred in a public restroom, which, by its very nature, is open to the public.

At common law, open lewdness was defined as an "unlawful indulgence of lust involving gross indecency with respect to sexual conduct" committed in a public place and observed by persons lawfully present. 3 Wharton's Criminal Law, § 315 (14th ed. 1980); 50 Am.Jur.2d *Lewdness, Indecency and Obscenity* § 1 (1970). Under some statutes, lewdness is deemed "open" when it is committed in another's presence or in a place open to public view, Landrum v. State, 255 P.2d 525, 529 (Okla.Crim.App. 1953), or in an open manner, *Ranson,* 99 Nev. at 767, 670 P.2d at 575.

Similarly, indecent exposure of one's genitals was punishable at common law without regard to whether the exposure was observed, or observed by a consenting adult, as long as the exposure occurred in a public place. *See* State v. Martin, 101 N.W. 637 (Iowa 1904); *see generally* 3 Wharton's Criminal Law § 317.

A conviction under either NRS 201.210 or NRS 201.220 does not require proof of intent to offend an observer or even that the exposure was observed. NRS 201.220, NRS 201.210. It is sufficient that the public sexual conduct or exposure was intentional. *Cf.* Quiriconi v. State, 95 Nev. 195, 591 P.2d 1133 (1979).

In light of the foregoing authorities, we conclude that appellants' acts of masturbation and oral copulation in a public restroom located at a public recreational facility were punishable without regard to whether the acts were observed by innocent visitors or whether appellants intended to offend anyone.

## CONCLUSION

For the reasons discussed above, each of the judgments of conviction are affirmed.[3]

---

[3]The Honorable Miriam Shearing, Justice, did not participate in the decision of this matter.