STATE OF NORTH CAROLINA v. MARK EDWARD FLY

No. 472A97

(Filed 9 July 1998)

### 1. Appeal and Error § 22 (NCI4th)— appeal based on dissent in Court of Appeals—sufficiency of evidence—reasoning of dissent—argument of additional reason

Where the dissent in the Court of Appeals was based on the premise that there was sufficient evidence to support defendant's conviction for indecent exposure, the State was not limited to arguing solely the reason stated in the dissent but could argue any reasoning in support of the proposition that the evidence was sufficient to support defendant's conviction. Therefore, although the reason stated in the dissent was that the buttocks are private parts, the State could make the additional argument on appeal that the evidence was sufficient to support defendant's conviction because it showed that, at the time defendant's buttocks were exposed, his genitals were also exposed.

### 2. Obscenity, Pornography, Indecency, or Profanity § 25 (NCI4th)— indecent exposure—private parts—organs of sex and excretion

The phrase "private parts" in the indecent exposure statute, N.C.G.S. § 14-190.9, includes the external organs of sex and excretion.

### 3. Obscenity, Pornography, Indecency, or Profanity § 25 (NCI4th)— indecent exposure—buttocks not private parts

The buttocks are not private parts within the meaning of the indecent exposure statute.

### 4. Obscenity, Pornography, Indecency, or Profanity § 25 (NCI4th)— indecent exposure—presence of member of opposite sex

The indecent exposure statute does not require the private parts to be exposed to a member of the opposite sex before a crime is committed, but rather that they be exposed "in the presence of" a member of the opposite sex. The statute does not go to what the victim saw but to what defendant exposed in the victim's presence without the victim's consent.

**5. Obscenity, Pornography, Indecency, or Profanity § 25 (NCI4th)— indecent exposure—sufficiency of evidence**

The evidence was sufficient to support defendant's conviction of indecent exposure in that the jury could find from the evidence that defendant had willfully exposed private parts, either his anus, his genitals, or both, in the presence of the female victim where it tended to show that, when the victim rounded a turn in the steps of her condominium, she saw defendant "mooning" her; defendant was bent over at the waist, with his short pants pulled down to his ankles, and he was otherwise naked from his head to his feet; the victim saw what she described as defendant's "fanny" or "his buttocks, the crack of his buttocks"; and when the victim yelled at defendant, he pulled his pants up and ran.

On appeal pursuant to N.C.G.S. § 7A-30(2) from a divided panel of the Court of Appeals, 127 N.C. App. 286, 488 S.E.2d 614 (1997), reversing a judgment entered by Helms, J., on 20 December 1995, in Superior Court, Mecklenburg County. Heard in the Supreme Court on 10 February 1998.

*Michael F. Easley, Attorney General, by Amy R. Gillespie, Assistant Attorney General, for the State-appellant.*

*Isabel Scott Day, Public Defender, by Julie Ramseur Lewis, Assistant Public Defender, for defendant-appellee.*

MITCHELL, Chief Justice.

The evidence at trial tended to show that at about 7:30 a.m. on 26 July 1995, Barbara Glover was walking up the steps of her condominium in Charlotte. She rounded a turn on the stairs and looked up to see defendant Mark Edward Fly, a twenty-eight-year-old male, "mooning" her. He was bent over at the waist, with his short pants pulled down to his ankles. He wore no other clothing, except a baseball cap, which was backwards on his head. He was otherwise naked from his head to his feet. Ms. Glover saw what she described as defendant's "fanny" or "his buttocks, the crack of his buttocks." When she yelled at defendant, he pulled his pants up and ran. Ms. Glover ran after defendant to get a description of his getaway vehicle—a bicycle, which she testified was "a real funky neon kind of color." The next morning, she saw him outside on the bicycle looking up at her condominium. She called the police, who later detained defendant for identification by Ms. Glover. After she identified him, he was arrested

by the police, without a warrant, for indecent exposure, in violation of N.C.G.S. § 14-190.9. A magistrate's order was issued pursuant to N.C.G.S. § 15A-511, finding probable cause to detain defendant without a warrant for his arrest on a charge of indecent exposure. Defendant was found guilty of that charge by the District Court, Mecklenburg County, and was sentenced to sixty days' imprisonment. He appealed to the Superior Court.

Defendant was tried *de novo* on 20 December 1995 in Superior Court, Mecklenburg County. At trial, defendant moved for dismissal of the charge against him on the ground that the evidence was insufficient to show that he had exposed his private parts. In particular, defendant argued that buttocks are not private parts within the meaning of the statute. The motion was denied, and the jury subsequently found defendant guilty. The trial court entered judgment sentencing defendant to sixty days' imprisonment.

Defendant appealed to the Court of Appeals. By a divided panel, the Court of Appeals reversed the trial court. The majority in the Court of Appeals concluded that under N.C.G.S. § 14-190.9, the term "private parts" includes only genital organs and, therefore, that the exposure of buttocks is not prohibited by the statute. *State v. Fly*, 127 N.C. App. 286, 288, 488 S.E.2d 614, 615 (1997) (citing N.C.G.S. § 14-190.9 (1993) (effective 1 January 1995)). Judge Walker stated in his dissent that he would give a broader interpretation to the statute to include buttocks within the definition of the phrase "private parts." *Id.* at 289, 488 S.E.2d at 616.

On 27 September 1997, the State gave notice of appeal as a matter of right to this Court based on Judge Walker's dissent in the Court of Appeals. Additionally, on 15 January 1998, the State filed a petition for writ of certiorari seeking to have this Court consider an additional argument, that defendant's private parts were exposed because the evidence tended to show that at the time defendant's buttocks were exposed, his genitals were also exposed. This reasoning was not advanced by the dissent in the Court of Appeals.

**[1]** Initially, we address whether the State can present an argument before this Court that was not the basis of the dissent below. In *State v. Kaley*, 343 N.C. 107, 468 S.E.2d 44 (1996), we said the "State can argue in this Court any evidence that supports [the dissent's] premise. It is not limited to arguing the reasons in the dissent as to why there was evidence to support the charge." *Id.* at 110, 468 S.E.2d at 46. Thus, because the dissent in this case was based on the premise that

STATE v. FLY

[348 N.C. 556 (1998)]

there was sufficient evidence to support the charge of indecent exposure, the State should not be limited to arguing solely that buttocks are private parts. Accordingly, the State is free here to argue any reasoning it wishes in support of the proposition that the evidence was sufficient to support defendant's conviction, as that is the issue on appeal before this Court. Since no writ of certiorari is necessary to permit the State to make such arguments, its petition for writ of certiorari is hereby denied.

The question presented by the State's appeal is whether the Court of Appeals erred in reversing the trial court's order denying defendant's motion to dismiss the charge of indecent exposure for insufficiency of the evidence. The elements of the offense are (1) the willful exposure, (2) of private parts of one's person, (3) in a public place, (4) in the presence of one or more persons of the opposite sex. N.C.G.S. § 14-190.9. The majority in the Court of Appeals reversed the trial court on the basis that the evidence was insufficient to support defendant's conviction because buttocks are not private parts within the meaning of the statute.

The State's witness, Ms. Glover, testified that defendant was bent over and was naked from head to foot, although he was wearing a baseball cap and shorts that were around his ankles. During direct examination, the following colloquy took place:

THE COURT: Now, exactly what parts of his anatomy did you see or experience?

[Ms. GLOVER:] His buttocks, the crack of his buttocks. He's real pasty white. He doesn't have a tan line at all.

Ms. Glover testified that defendant was about four feet in front of her and that "if I would have reached out, I probably could have touched him."

The State argues that the evidence was sufficient to survive defendant's motion to dismiss because it is undisputed that defendant was naked from head to foot and that by definition defendant's private parts were exposed, regardless of whether Ms. Glover actually saw them. We agree.

[2] It appears that in the present case, the Court of Appeals based its holding upon a misreading of *State v. Jones*, 7 N.C. App. 166, 171 S.E.2d 468 (1970). In *Jones*, the Court of Appeals discussed the meaning of the phrase "private parts" as used in another statute, N.C.G.S.

§ 14-190 (1969) (repealed 1971). It concluded that the phrase as used in that statute, since repealed, included only the genital organs. *Jones*, 7 N.C. App. at 169, 171 S.E.2d at 469. As a result, the court held in *Jones* that "the exposure by a female of her breasts to the public view in a public place is not an offense under [former] G.S. 14-190." *Id.* at 169-70, 171 S.E.2d at 469. The definition applied by the court in *Jones* is too narrow to be historically correct and complete. For example, *The American Heritage Dictionary* defines "private parts" as "[t]he external organs of sex and excretion." *The American Heritage Dictionary of the English Language* 1442 (3d ed. 1992). We agree and conclude that in common law and as used in former N.C.G.S. § 14-190, the phrase "private parts" included both the external organs of sex and of excretion.

In the present case, the Court of Appeals erroneously concluded that the legislature's use of the term "private parts" when it enacted "section 14-190.9 is particularly significant in the face of . . . [the Court of Appeals' prior] decision in *Jones* because it reflects a satisfaction with that Court's definition of 'private parts' as a person's 'genital organs.' " *Fly*, 127 N.C. App. at 288 n.1, 488 S.E.2d at 615 n.1. The majority in the Court of Appeals, however, failed to note that the legislature quickly reacted to the decision in *Jones* in the very act which repealed former N.C.G.S. § 14-190 and which first enacted N.C.G.S. § 14-190.9. There, the legislature expressly and unequivocally stated its intent that "[e]very word, clause, sentence, paragraph, section, or other part of this act shall be interpreted in such manner as to be as expansive as the Constitution of the United States and the Constitution of North Carolina permit." Act of June 17, 1971, ch. 591, sec. 2, 1971 N.C. Sess. Laws 519 (adding new section 14-190.9 prohibiting indecent exposure and repealing N.C.G.S. § 14-190). However, the legislature later amended N.C.G.S. § 14-190.9 by adding subsection (b) providing that: "Notwithstanding any other provision of law, a woman may breast feed in any public or private location where she is otherwise authorized to be, irrespective of whether the nipple of the mother's breast is uncovered during or incidental to the breast feeding." Act of 7 July 1993, ch. 301, sec. 1, 1993 N.C. Sess. Laws 586, 587. In footnote 1 of its opinion in the present case, the majority of the Court of Appeals simply misread the legislative history and the specifically expressed intent of the legislature which repealed the former statute and adopted N.C.G.S. § 14-190.9.

[3] We have already concluded that the phrase "private parts" includes the external organs of sex *and excretion*. On the facts of this

case, it is unnecessary for us to determine what, if any, other parts of the female or male anatomy may be included within the phrase "private parts," as used in N.C.G.S. § 14-190.9, in light of the legislature's expressed preference for an "expansive" interpretation. However, given the posture of this case, we think it wise to note our agreement with the conclusion of the majority below that buttocks are not private parts within the meaning of the statute. To hold that buttocks are private parts would make criminals of all North Carolinians who appear in public wearing "thong" or "g-string" bikinis or other such skimpy attire during our torrid summer months. Our beaches, lakes, and resort areas are often teeming with such scantily clad vacationers. We simply do not believe that our legislature sought to discourage a practice so commonly engaged in by so many of our people when it enacted N.C.G.S. § 14-190.9. To make such attire criminal by an *overly* expansive reading of the term "private parts" was not, we are convinced, the intent of our legislature. The difference, however, between defendant's conduct and someone wearing a bikini is that the former is a clear-cut violation of recognized boundaries of decency, which the statute was intended to address, whereas the latter is a matter of taste, which we do not believe our legislators intended to make criminal.

**[4],[5]** In the present case, the jury could reasonably find from the evidence that defendant had exposed private parts, either his anus, his genitals, or both. We held under former N.C.G.S. § 14-190 that " '[i]t is not essential to the crime of indecent exposure that someone shall have seen the exposure provided it was intentionally made in a public place and persons were present who could have seen if they had looked.' " *State v. King*, 268 N.C. 711, 712, 151 S.E.2d 566, 567 (1966) (quoting 33 Am. Jur. *Lewdness, Indecency and Obscenity* § 7, at 19 (1941)). Likewise, the current statute does not require that private parts be exposed *to* a member of the opposite sex before the crime is committed, but rather that they be exposed *"in the presence of"* a member of the opposite sex. N.C.G.S. § 14-190.9 (emphasis added). The statute does not go to what the victim saw but to what defendant exposed in her presence without her consent. Thus, the fact that Ms. Glover did not crane her neck or otherwise change her position in an attempt to see more of defendant's anatomy than he had already thrust before her face does not defeat the charge of indecent exposure. Defendant's exposure was indecent within the meaning of the statute and is among the acts the legislature intended to proscribe.

Furthermore, the willfulness of defendant's act distinguishes the exposure of his private parts from situations in which such exposure is unintended and incidental to a necessary activity. Here, defendant *willfully* exposed his private parts in the presence of a member of the opposite sex, apparently for the shock value of the act and its hoped-for effect on Ms. Glover. He succeeded in that endeavor. Even in a society where all boundaries of common decency seem frequently under assault, it is simply unacceptable for a person to harass others by *willfully* exposing in their presence "those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others." *State v. Galbreath*, 69 Wash. 2d 664, 668, 419 P.2d 800, 803 (1966).

For the foregoing reasons, we conclude that the evidence was sufficient to support defendant's conviction for indecent exposure and that the Court of Appeals erred in reversing the trial court. The decision of the Court of Appeals is reversed, and this case is remanded to that court for its further remand to the Superior Court, Mecklenburg County, for reinstatement of its judgment.

REVERSED AND REMANDED.