THE STATE OF NEVADA, Appellant, v.
MARTY EDWARD CASTANEDA, Respondent.

No. 52911

November 24, 2010 245 P.3d 550

[Rehearing denied December 22, 2010]

*Catherine Cortez Masto*, Attorney General, Carson City; *David J. Roger*, District Attorney, *Steven S. Owens*, Chief Deputy District Attorney, and *Andrea M. Rachiele*, Deputy District Attorney, Clark County, for Appellant.

*Philip J. Kohn*, Public Defender, and *Amy A. Porray*, Deputy Public Defender, Clark County, for Respondent.

## OPINION

By the Court, PICKERING, J.:

Respondent Marty Edward Castaneda is accused of intentionally and repeatedly exposing his genitals and buttocks while standing on the sidewalk in front of the county jail near Lewis Avenue and First Street in Las Vegas. A witness sitting in a nearby car observed his exhibitions and called the police. Castaneda was arrested and charged with indecent exposure under NRS 201.220. He entered a plea of not guilty and also asserted a constitutional challenge to the statute, arguing that it is facially vague and overbroad and cannot be enforced, even if the State were to prove the conduct charged at trial. The district court agreed with Castaneda and dismissed the indecent exposure charges.

We reverse and remand. NRS 201.220(1) provides that "[a] person who makes any open and indecent or obscene exposure of his or her person, or of the person of another, is guilty" of a gross misdemeanor for a first offense. While Castaneda is correct that NRS 201.220 does not define what it means to expose one's "person" in an "open and indecent or obscene" manner, the lack of internal definitions does not invalidate the statute.

Indecent exposure was a public offense at common law. For such an offense, NRS 193.050(3) incorporates the common law definitions. The common law, as well as the case law concerning NRS 201.220, leaves no doubt that a person who intentionally exposes his genitals on a public street corner commits indecent exposure. Thus, NRS 201.220 applies to Castaneda's conduct, and he may

not avoid liability by theorizing about the statute's hypothetical vagueness as to others.

Given the Legislature's use of the common law to define NRS 201.220's terms, we read NRS 201.220 as limited to the common law prohibition against open and indecent or obscene exposure of one's genitals or anus. So limited, NRS 201.220 does not catch a substantial amount of constitutionally protected expressive conduct within its sweep. *See Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 567-68 (1991) (plurality). Thus, Castaneda's overbreadth challenge also fails.

## I.

Although our review is de novo, we commence it under the presumption "that statutes are constitutional"; the party challenging a statute has "the burden of making 'a clear showing of invalidity.'" *Berry v. State*, 125 Nev. 265, 279, 212 P.3d 1085, 1095 (2009) (quoting *Silvar v. Dist. Ct.*, 122 Nev. 289, 292, 129 P.3d 682, 684 (2006)). Further, we adhere to the precedent that "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality." *Hooper v. California*, 155 U.S. 648, 657 (1895); *accord Virginia and Truckee R.R. Co. v. Henry*, 8 Nev. 165, 174 (1873) ("It requires neither argument nor reference to authorities to show that when the language of a statute admits of two constructions, one of which would render it constitutional and valid and the other unconstitutional and void, that construction should be adopted which will save the statute."). This canon of constitutional avoidance dates back to *Murray v. The Charming Betsy*, 6 U.S. 64 (1804), and remains in full force today. *Skilling v. United States*, 561 U.S. 358, 405-06 & n.40 (2010).

## II.

### A.

The district court invalidated NRS 201.220 as unconstitutionally vague. "Vagueness doctrine is an outgrowth not of the First Amendment, but of the Due Process Clause[s] of the Fifth" and Fourteenth Amendments to the United States Constitution. *United States v. Williams*, 553 U.S. 285, 304 (2008); *Silvar*, 122 Nev. at 293, 129 P.3d at 684-85. "Vagueness may invalidate a criminal law for either of two independent reasons," *Chicago v. Morales*, 527 U.S. 41, 56 (1999): (1) if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited"; or (2) if it "is so standardless that it authorizes or encourages seriously

discriminatory enforcement." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010) (quoting *Williams*, 553 U.S. at 304).[1] *See also Flamingo Paradise Gaming v. Att'y General*, 125 Nev. 502, 509-13, 217 P.3d 546, 551-54 (2009) (discussing how these tests apply in the civil and criminal contexts).

"[M]athematical precision is not possible in drafting statutory language." *City of Las Vegas v. Dist. Ct.*, 118 Nev. at 864, 59 P.3d at 481. Nonetheless, "the law must, at a minimum, delineate the boundaries of unlawful conduct. Some specific conduct must be deemed unlawful so individuals will know what is permissible behavior and what is not." *Id.* A law that leaves the determination of whether conduct is criminal to a purely subjective determination, such as what might "annoy" a minor or "manifest" an illegal "purpose," is " 'vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible normative standard, but rather in the sense that no standard of conduct is specified at all.' " *Id.* at 865, 59 P.3d at 482 (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)) (invalidating a law making it a misdemeanor to "annoy" a minor); *Silvar*, 122 Nev. at 294, 129 P.3d at 685 (invalidating law prohibiting loitering that "manifest[s] the purpose of inducing . . . prostitution"). *See Holder*, 561 U.S. at 20 ("We have in the past 'struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.' " (quoting *Williams*, 553 U.S. at 306)).

---

[1]Some Nevada cases have used a conjunctive "both/and" formulation in stating these two vagueness tests. *See City of Las Vegas v. Dist. Ct.*, 118 Nev. 859, 862, 59 P.3d 477, 480 (2002) (a statute is subject to facial vagueness attack "if the statute *both*: (1) fails to provide notice sufficient to enable ordinary people to understand what conduct is prohibited; *and* (2) authorizes or encourages arbitrary and discriminatory enforcement" (emphasis added)), *quoted in Berry*, 125 Nev. at 279, 212 P.3d at 1095. Our occasional conjunctive phrasing dates back at least to *State of Nevada v. Father Richard*, 108 Nev. 626, 629, 836 P.2d 622, 624 (1992), where we stated that "[a] vague law is one which fails to provide persons of ordinary intelligence with fair notice of what conduct is prohibited *and also* fails to provide law enforcement officials with adequate guidelines to prevent discriminatory enforcement," (emphasis added) (citing *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972)). While the ordinance challenged in *Papachristou* failed both vagueness tests, *see* 405 U.S. at 162 (this ordinance is "void for vagueness, both in the sense that it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute, and because it encourages arbitrary and erratic arrests and convictions" (internal quotation and citation omitted)), *Papachristou* did not hold, as *Father Richard*'s paraphrase suggests, that both tests *must* be met before a vagueness challenge can succeed. As *Morales*, *Williams*, and *Holder* state, the vagueness tests are independent and alternative, not conjunctive.

But constitutional vagueness analysis does *not* treat statutory text as a closed universe. Enough clarity to defeat a vagueness challenge " 'may be supplied by judicial gloss on an otherwise uncertain statute,' " *Skilling*, 561 U.S. at 412 (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)), by giving a statute's words their "well-settled and ordinarily understood meaning," *Berry*, 125 Nev. at 280, 212 P.3d at 1095 (citing *Nelson v. State*, 123 Nev. 534, 540-41, 170 P.3d 517, 522 (2007)), and by "look[ing] to the common law definitions of the related term or offense," *id.* (citing *Ranson v. State*, 99 Nev. 766, 767, 670 P.2d 574, 575 (1983)).

As the discussion that follows will show, we conclude that, under NRS 193.050, NRS 201.220(1) must be read as incorporating the common law prohibition against intentional exposure of the genitals or anus under circumstances that make such exposure open and indecent or obscene. Thus limited, NRS 201.220(1) properly applies to Castaneda and is not unconstitutionally vague.

## B.

The challenged statute states: "A person who makes any open and indecent or obscene exposure of his or her person, or of the person of another, is guilty: (a) [f]or the first offense, of a gross misdemeanor [and] (b) [f]or any subsequent offense, of a category D felony . . . ." NRS 201.220(1). Castaneda has a prior conviction, so he faces a felony charge.

Castaneda's vagueness argument focuses on the statute's euphemistic reference to "his or her person." As he reads the word "person," most of us expose our "person" every day. He faults the statute for not specifying the parts of the body whose exposure qualifies as "indecent or obscene" and argues that the statute, as written, leaves too much to guesswork to satisfy due process.

The State responds by pointing to the settled common law and commonsense understanding that, in a civilized society, people do not intentionally and publicly display their genitals. Going further, the State argues that NRS 201.220(1)'s prohibition of "any open and indecent or obscene exposure of the person" forbids exhibition of those parts of the body "which instinctive modesty, human decency or natural self respect requires shall be customarily kept covered in the presence of others." An exposure can be "indecent" without being "obscene." *Quiriconi v. State*, 95 Nev. 195, 591 P.2d 1133 (1979). Unlike obscenity, *see* NRS 201.235, indecency does not convey prurience; rather, "the normal definition of 'indecent' merely refers to nonconformance with accepted standards of morality." *FCC v. Pacifica Foundation*, 438 U.S. 726, 740 (1978). The State argues that NRS 201.220(1) prohibits a range of

exposures, from genitals to buttocks to women's breasts, depending on community tolerance and prevailing standards of morality.

Both sides miss the point that history provides. In the indecent exposure context, the common law used "person" as a euphemism for penis, making it fair to read NRS 201.220(1) as prohibiting open and indecent or obscene exposure of one's genitals. However, neither the statute's words nor its common law antecedents support the State's view that NRS 201.220(1) penalizes exposures just because they offend local sensibilities or standards of morality. Leaving it to the word "indecent" to conclusively define the conduct that NRS 201.220(1) outlaws, rather than adhering to the common law equation of "person" with "genitals," goes beyond settled common law doctrine and the fair intendment of the words in NRS 201.220(1) and ventures into vagueness territory.

"By statute in virtually every jurisdiction, indecent exposure is recognized as an offense." 3 Charles E. Torcia, *Wharton's Criminal Law* § 308, at 200 (15th ed. 1995). Over half the states have indecent exposure statutes that specify what body parts cannot be openly exposed, with most naming the genitals, anus, or sex organs and some also listing the buttocks and female breasts. *See* Jeffrey C. Narvil, *Revealing the Bare Uncertainties of Indecent Exposure*, 29 Colum. J.L. & Soc. Probs. 85, 92-93 (1995) (canvassing statutes). Other jurisdictions, including Nevada, have older, more general statutes. These statutes express their prohibition "not in terms of genitals, buttocks, or breasts, but rather 'person,' 'private parts,' 'intimate parts,' or simply an exposure 'of the body.'" *Id.* at 93-94.

> Whether or not there is merit in actually prohibiting the exposure of specific anatomical parts, the [specific] statutes do accomplish an important objective in criminal law: They inform the public precisely what behavior will be considered unlawful. . . . While most persons possessing even a passing familiarity with mainstream American society would recognize that [the more general] statutes restricting exposure of one's "private" or "intimate" parts [or "person"] would likely encompass the genitals, one might not hold the same assurance with regard to other parts of the body.

*Id.* (footnotes omitted).

Addressing vagueness challenges like Castaneda's, courts elsewhere have not found their generally worded statutes to require people to search their "own standards of morality [or] standards of dress" to know which body parts they publicly exhibit at their peril. *Duvallon v. District of Columbia*, 515 A.2d 724, 725 (D.C.

1986). Instead, they find these statutes to express the common law's core prohibition against genital exposure. *Id.* at 726. While social mores and norms may inform when and where exposure of one's genitals is "open and indecent or obscene," the core prohibition remains constant. *Parnigoni v. District of Columbia*, 933 A.2d 823 (D.C. 2007). So applied, general indecent exposure statutes have repeatedly survived void-for-vagueness challenge. *People v. Massicot*, 118 Cal. Rptr. 2d 705, 714 (Ct. App. 2002); *State v. Wymore*, 560 P.2d 868, 869 (Idaho 1977); *People v. Vronko*, 579 N.W.2d 138, 141 (Mich. Ct. App. 1998); *Threet v. State*, 710 S.W.2d 98, 100 (Tex. Ct. App. 1986); *State v. Galbreath*, 419 P.2d 800, 803 (Wash. 1966).

The analysis in *Duvallon* and *Parnigoni* is cogent, especially because the District of Columbia's indecent exposure statute resembles NRS 201.220(1) in that it makes it unlawful "for any person or persons to make any obscene or indecent exposure of his or her person." D.C. Code § 22-1312(a) (2001).

The defendant in *Duvallon* sought review from the United States Supreme Court by appearing outside its building wearing only a sandwich board entitled, "Petition for Rehearing." 515 A.2d at 725. While the signboard in front covered Duvallon's breasts and genitals, in back it left her buttocks completely exposed. *Id.* Noting that " '[i]n the absence of a statutory definition of the elements of a crime, the common law definition is controlling,' " *id.* at 725 (quoting *Perkins v. United States*, 446 A.2d 19, 23 (D.C. 1982)), the court canvassed the "English common law cases [and found them to] compel the conclusion that indecent exposure was limited to the exposure of genitals." *Id.* at 726. The court went on to say, "Significantly, the word 'person' has been held to be a euphemism for the penis," such that "by 1824, the word 'person' in connection with sexual matters had acquired a meaning of its own, a meaning which made it a synonym for penis." *Id.* at 727 (quotation omitted).[2] The common law prohibited exposure of the genitals, not the buttocks by themselves. Since no proof suggested that the defendant exposed more than her buttocks, the conviction was reversed, which obviated the vagueness challenge. *Id.* at 728 n.10.

---

[2]The court noted that the "statute refers to the '. . . indecent exposure of *his* or *her* person' " and concluded that it thus was not limited to males but, rather, "[i]t is the indecent exposure of the comparable portions of the male and female anatomy that constitutes the crime. In other words, the indecent exposure of human genitalia is the offense." *Duvallon*, 515 A.2d at 728 (alteration in original). By 2009 amendment, NRS 201.220(1) now uses gender-neutral "his or her" phraseology, A.B. 475, 75th Leg. (Nev. 2009), although when Castaneda was charged it only said "his." The change is immaterial to Castaneda's arguments on this appeal.

In *Parnigoni*, the defendant took off his clothes to play nude Ping-Pong with his host's eleven-year-old son, surprising his host who came home early to find his houseguest naked in the family's basement game room. 933 A.2d at 825. The court upheld the indecent exposure conviction against a vagueness challenge. Given *Duvallon*, the defendant could not claim lack of notice that the statutory prohibition against " ' "obscene or indecent exposure of his or her person" [made] the indecent exposure of human genitalia [a criminally punishable] offense.' " 933 A.2d at 826 (quoting D.C. Code § 22-1312(a) and *Duvallon*, 515 A.2d at 728). Also clear from prior cases was the criminal intent required: A defendant must have intended to expose his or her genitals; accidental exposure is not enough. *Id.* (citing *Peyton v. District of Columbia*, 100 A.2d 36, 37 (D.C. 1953)). Because Parnigoni's intentional exposure of his genitals violated the statute's terms as defined by existing case law, his vagueness challenge failed. "[O]ne to whose conduct a statute clearly applies is not entitled to attack it on the ground that its language might be less likely to give fair warning in some other situation not before the court." *Id.* at 827 n.5 (quoting *Leiss v. United States*, 364 A.2d 803, 807 (D.C. 1976)).

Castaneda's complaint that he did not have fair notice that NRS 201.220(1) incorporates the common law prohibition against genital exposure fares no better than Parnigoni's. The predecessor to NRS 201.220(1) was adopted in 1911, at the same time as the predecessor to NRS 193.050. Crimes and Punishments Act of 1911 §§ 35, 195, *reprinted in* 1912 Revised Laws of Nevada, Vol. 2, §§ 6300, 6460. NRS 193.050(3) declares that, "The provisions of the common law relating to the definition of public offenses apply to any public offense which is . . . prohibited [by statute] but is not defined, or which is . . . prohibited but is incompletely defined." And as we held in *Hogan v. State*, 84 Nev. 372, 373, 441 P.2d 620, 621 (1968), "The term common law [in NRS 193.050], has reference not only to the ancient unwritten law of England, but also to that body of law created and preserved by the decisions of courts as distinguished from that created by the enactment of statutes by legislatures." Thus, NRS 193.050(3) incorporates into NRS 201.220(1) the common law definitions applicable to indecent exposure.

This court definitively construed NRS 201.220(1) in *Young v. State*, 109 Nev. 205, 849 P.2d 336 (1993). *Young* holds that NRS 201.220(1) incorporates the common law and that "indecent exposure of one's genitals was punishable at common law" and today if the "exposure was intentional" and open and indecent or

obscene. *Id.* at 215, 849 P.2d at 343; *accord Ebeling v. State*, 120 Nev. 401, 91 P.3d 599 (2004) (upholding conviction of defendant who exposed his penis to children staying in a hotel room); *Quiriconi*, 95 Nev. 195, 591 P.2d 1133 (upholding conviction of defendant who stood on his front porch minus his pants so cars passing by could see his private parts).

Numerous authorities agree that intentional genital exposure violates statutory and common law prohibitions against indecent exposure of one's "person" or "private parts." *See Com. v. Arthur*, 650 N.E.2d 787, 790-91 (Mass. 1995) (although " 'indecent exposure'. lacks a commonly understood meaning when considered with respect to parts of the body other than the genitalia," the common law gives "fair warning" that "exposure of [one's] genitalia [is] a crime" and holding that exposing pubic hair but not genitals does not violate the law); *State v. Fly*, 501 S.E.2d 656, 659 (N.C. 1998) (a defendant commits indecent exposure when he exposes his "external organs of sex and excretion," meaning "either his anus, his genitals, or both"); *Wicks v. City of Charlottesville*, 208 S.E.2d 752, 754 (Va. 1974) (indecent exposure is defined as the " 'intentional exposure of part of one's body (as the genitals) in a place where such exposure is likely to be an offense against the generally accepted standards of decency in a community' " (quoting *Webster's Third New International Dictionary* 1147 (1966))); *State v. Galbreath*, 419 P.2d 800, 802-03 (Wash. 1966) (rejecting vagueness challenge by defendant who openly exposed his genitals; the statute's common law roots gave fair warning such exposure was prohibited); *People v. Massicot*, 118 Cal. Rptr. 2d 705, 710-11 (Ct. App. 2002) ("the common law offense of indecent exposure requires display of the genitals"; it "targeted what psychologists term exhibitionism, or genital exposure"); *People v. Vronko*, 579 N.W.2d 138, 141 (Mich. Ct. App. 1998) (defining indecent exposure as " 'intentional exposure of part of one's body (as the genitals) in a place where such exposure is likely to be an offense against the generally accepted standards of decency in a community' " (quoting *Webster's New Collegiate Dictionary* (1977))); *cf. People v. Santorelli*, 600 N.E.2d 232, 237 & n.4 (N.Y. 1992) (Titone, J., concurring) (among jurisdictions with statutes specifying the parts of the body exposure of which constitutes the offense, 22 prohibit genital exposure) (collecting statutes); Model Penal Code § 213.5 (1980) (prohibiting as indecent exposure of one's "genitals under circumstances in which [the actor] knows his conduct is likely to cause affront or alarm").

In 1995, the Legislature amended NRS 201.220 to add a new subsection 2 that provides, "For the purposes of this section, the breast feeding of a child by the mother of the child does not constitute an act of open and indecent or obscene exposure of her

body." 1995 Nev. Stat., ch. 105, § 3, at 128. Castaneda argues that this new paragraph makes NRS 202.120(1) unconstitutionally vague, even if it was clear before; why have a specific permission for breastfeeding, he asks, if indecent exposure of one's "person" only prohibits genital exposure? But the new language was added as part of the Legislature's larger effort to endorse breastfeeding, not to change the prohibition in NRS 201.220(1).[3] NRS 201.220(2) did not substantively expand NRS 201.220(1) and introduce vagueness that didn't exist before. *See also* NRS 193.060 ("The provisions of this title [15, encompassing NRS Chapters 193-207], insofar as they are substantially the same as existing statutes, shall be construed as continuations thereof and not as new enactments").

Castaneda stands charged with intentionally exposing his genitals on a downtown Las Vegas street corner. If proved, this violates NRS 201.220(1). The fact the statute depends on case- and common-law definitions to establish the conduct it forbids—specifically, what it means to expose one's "person"—does not render it impermissibly vague. *See Berry*, 125 Nev. at 279-82, 212 P.3d at 1095-97 (upholding NRS 201.210, the "open and gross lewdness" companion statute to NRS 201.220, against a challenge that its lack of internal definitions renders it unconstitutionally vague; the common law and cases give sufficiently precise meaning to its terms). With the core forbidden conduct thus concretely defined, NRS 201.220(2) neither leaves ordinary people to guess at what they must, can, or cannot do, *see Flamingo Paradise Gaming*, 125 Nev. at 513-14, 217 P.3d at 554, nor does it invite seriously discriminatory enforcement, *see Silvar*, 122 Nev. at 293, 129 P.3d at 685. Some discretion, to be sure, applies to determining when and where genital exposure may be open and indecent or obscene, but this is not enough to invalidate the statute on void-for-vagueness grounds.

## C.

The amended information alleges that Castaneda intentionally "ma[d]e an open, indecent, and obscene exposure of his person by then and there deliberately dropping his pants and underwear and

---

[3]The 1995 Legislature added an almost identical breastfeeding exemption to Nevada's lewdness statute, NRS 201.210(2), and also enacted NRS 201.232(2): "Notwithstanding any other provision of law, a mother may breast feed her child in any public or private location where the mother is otherwise authorized to be, irrespective of whether the nipple of the mother's breast is uncovered during or incidental to the breast feeding." This makes sense because the common law teaches that breasts are not genitals.

exposing his penis and/or groin area *and/or buttocks* in the direct view and presence of" the complaining witness. (Emphasis added.) The "and/or" phrasing is problematic. It suggests—as the State's expansive reading of NRS 201.220(1) would hold—that NRS 201.220(1) permits conviction based on exposure of the buttocks alone. We disagree.

As discussed above, in the absence of a specific indecent exposure statute, many courts have held that "intent to expose one's genitals is a necessary element of the offense." *Massicot*, 118 Cal. Rptr. 2d at 709. Thus, under a generally worded indecent exposure statute like NRS 201.220(1), a defendant who displays only his buttocks but not his anus or his genitals does not commit the offense of indecent exposure. *Fly*, 501 S.E.2d at 659; *see Duvallon*, 515 A.2d at 728; *see also Com. v. Quinn*, 789 N.E.2d 138, 146-47 (Mass. 2003) (while deciding that exposing the buttocks can amount to gross lewdness, "[t]his defendant cannot be prosecuted for exposing his buttocks" because he "did not have fair notice that exposure of 'thong' clad buttocks could be prosecuted as an open and gross lewdness offense").[4]

Of note, the offense consists of the intentional, open and indecent or obscene exposure, not its visual observation by others. *See Young*, 109 Nev. at 215, 849 P.2d at 343 ("[a] conviction under . . . NRS 201.220 does not require . . . that the exposure was observed"). Thus, the cases holding exposure of the genitals to be a necessary element of indecent exposure do *not* require the genital exposure to have been witnessed. *People v. Carbajal*, 8 Cal. Rptr. 3d 206, 211 (Ct. App. 2003) (while California law "requires evidence that a defendant actually exposed his or her genitals in the presence of another person . . . there is no concomitant requirement that such person actually must have seen the defendant's genitals"); *State v. Vars*, 237 P.3d 378, 382 (Wash. Ct. App. 2010) ("the witness's observation of the offender's genitalia" is "immaterial"; "[s]imply because" the Washington statute, as interpreted, "requires an exposure of genitalia in the presence of another, it does not mean that the other person must observe the defendant's private parts for an indecent exposure to have occurred"); *see* 50 Am. Jur. 2d *Lewdness, Indecency, and Obscenity* § 16 (2006) ("That a victim never actually saw the accused's genitals does not necessarily preclude a conviction for indecent ex-

---

[4]States that extend the offense to include exposure of the buttocks have done so explicitly. *See* Del. Code Ann. tit. 11, § 764 (2007) (defining "indecent exposure" to include exposure of the genitals or buttocks); Ind. Code Ann. § 35-45-4-1(d) (LexisNexis 2009) (defining "nudity" to include "showing of the . . . buttocks with less than a fully opaque covering").

posure, where the crime involves the exposing of oneself under circumstances that he reasonably expects to be seen naked, and not whether the victim actually sees his genitalia."). Evidence that a witness saw the defendant's bare buttocks or naked body can be relevant circumstantial evidence, if it suggests that genital exposure occurred, seen or not. However, the mere exposure of one's buttocks, as occurs with a thong or G-string, does not establish exposure of one's "person," which is a required element of the indecent exposure offense. *Fly*, 501 S.E.2d at 659 ("[t]o hold that buttocks are private parts" whose exposure is forbidden "would make criminals of all North Carolinians who appear in public wearing 'thong' or 'g-string' bikinis," which the legislature should state specifically if that is its intent).

We deal here with a criminal statute of statewide application. Nevada is home to rural, sparsely populated areas "where generations of families with old values have left their stamp upon a small town" and where "attitude[s] toward life [have] changed but little over a span of a century." Robert Laxalt, *Nevada* 12 (W.W. Norton & Company, Inc. 1977). These rural values contrast sharply with Las Vegas and Reno "where the exodus from neighboring California and the westward movement of people have created cities of newly forming identities." *Id. See also Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 597 (2002) (Kennedy, J., concurring) (noting how different the "public depiction of conduct found tolerable in Las Vegas, or New York City" might be from that acceptable elsewhere (quoting *Miller v. California*, 413 U.S. 15, 32 (1973))). While the Legislature has empowered local governments to regulate obscenity, *see* NRS 201.239, it is unreasonable to read NRS 201.220(1) as varying the exposures it prohibits depending on community ethos. We thus read NRS 201.220(1) as other jurisdictions have read similarly worded statutes, to forbid exposures of the "person," meaning genitals or anus, that are "open and indecent or obscene." Thus, we disregard the words "or buttocks" in the amended information as unnecessary factual detail or surplusage. *See Quiriconi*, 95 Nev. at 196, 591 P.2d at 1134 (treating the words "and obscene" as surplusage in an information alleging open and indecent exposure).

Our reading of NRS 201.220(1) keeps it true to its common law origins. *See Duvallon*, 515 A.2d at 728. It also avoids an interpretation that would leave a statewide statute to apply variably from locale to locale, depending on an arresting officer's, judge's, or jury's sense of propriety. Community standards may inform when and where genital exposure is "open and indecent or obscene."[5]

---

[5] The parties do not argue and this case does not present an issue of whether a statewide or local standard governs the determination of when a given exposure is indecent or obscene.

However, under our interpretation of NRS 201.220, the act that is prohibited—exposure of the genitals or anus—remains constant, avoiding the significant vagueness problems that might otherwise result.

## III.

The district court also declared NRS 201.220 unconstitutionally overbroad. It did so based on stated concerns that NRS 201.220 could be used to convict "a woman nursing a child who is not the child's mother" or "[p]ersons expressing themselves artistically or politically through nudity or dressing scantily." The statute's application to wet nurses, however, is not before the court: NRS 201.220(1) clearly proscribes Castaneda's conduct and his wet nurse hypothetical neither implicates the First Amendment, *see Holder*, 561 U.S. at 21, nor describes a scenario common enough to say vagueness "permeates" its text. *Flamingo Paradise Gaming*, 125 Nev. at 512-13, 217 P.3d at 553-54. However, "[s]exual expression which is indecent but not obscene is protected by the First Amendment." *Sable Communications of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989). This lends Castaneda's erotica-based overbreadth argument more, but not much, merit.

In *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560 (1991), the Supreme Court upheld enforcement of Indiana's public indecency law against nude dancers and the establishments that employed them. A plurality recognized that "nude dancing of the kind sought to be performed here is expressive conduct within the outer perimeters of the First Amendment, though . . . only marginally so." *Id.* at 566. Nonetheless, a majority concluded that the intrusion was justified because "[p]ublic indecency statutes of this sort are of ancient origin[,] presently exist in at least 47 States," and "reflect moral disapproval of people appearing in the nude among strangers in public places," which reflects a substantial governmental interest. *Id.* at 567-68. Further, "the public indecency statute is 'narrowly tailored'; Indiana's requirement that the dancers wear at least pasties and G-strings is modest, and the bare minimum necessary to achieve the State's purpose." *Id.* at 572.

To invalidate a statute as overbroad at the behest of one to whom it properly applies "is, manifestly, strong medicine" that is administered "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). Even assuming that NRS 201.220 applies to constitutionally protected expressive conduct—and there is no showing that this general statute has been or will be applied to artistic performances, *see* NRS 201.253—"where

conduct and not merely speech is involved . . . the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Id.* at 615. Although *Barnes* did not present an overbreadth challenge to Indiana's public indecency statute, its holding defeats Castaneda's overbreadth argument. NRS 201.220 captures, at most, no more than *Barnes* allows. Judged in relationship to its legitimate sweep, the statute thus does not, by its terms, interdict a substantial amount of constitutionally protected activity, and accordingly, Castaneda's overbreadth challenge fails.

For these reasons, we reverse and remand.

PARRAGUIRRE, C.J., and HARDESTY, DOUGLAS, CHERRY, SAITTA, and GIBBONS, JJ., concur.