**David PARNIGONI, Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 04–CT–1378.

District of Columbia Court of Appeals.

Argued June 20, 2006.

Decided Oct. 11, 2007.

David Schertler, Washington, DC, for appellant.

Janice Y. Sheppard, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia at the time the brief was filed, Edward E. Schwab, Deputy Attorney General, and Rosalyn Calbert Groce, Assistant Attorney General, were on the brief for appellee.

Before GLICKMAN, KRAMER and FISHER, Associate Judges.

KRAMER, Associate Judge:

The appellant, David Parnigoni, challenges his convictions for two counts of indecent exposure, arguing that they should be overturned because the language of the statute under which he was convicted is unconstitutionally vague. He asserts that the conviction involving a young boy, O.J., eleven years old at the time of the events at issue, should be overturned on the additional grounds that the conduct was private, consensual and, according to Parnigoni, therefore not prohibited under the law. He further argues that the other conviction involving O.J.'s father, J.J., should be overturned because the evidence was insufficient to show that J.J. viewed his exposed genitalia, as the law requires, or if so, that the exposure was intentional. We affirm the convictions.

## I

The factual background of this matter is as follows: Parnigoni had worked at Janney Elementary School, where he befriended O.J. and his family.[1] Over the course of several years,[2] Parnigoni spent considerable time with O.J., and the family grew to trust him, treating him as a family member and giving him keys to their home.

On the day of the events at issue here, the then—thirty-three-year-old Parnigoni spent the day with the then eleven-year-old O.J. That afternoon, the two were alone in O.J.'s home when Parnigoni suggested that they play a game of ping-pong.

O.J. agreed, and they went into the basement where there was a ping-pong table. Parnigoni suggested an additional rule for this particular game of ping-pong: that whoever lost a game would have to play the next game naked. O.J. agreed to play according to that rule and proceeded to beat Parnigoni at the first game they played. Parnigoni then took off all of his clothes and began to play the next match naked. O.J. testified that he was able to see Parnigoni's "whole body except for his legs down," including his "private parts."

At about 2:45 p.m., while Parnigoni and O.J. were still in the basement playing their second game of ping-pong, O.J.'s father, J.J., returned home. J.J. was running late for a dentist appointment and was stopping at home to pick up his son to take him to the appointment as well. While J.J. was still outside, walking to the front door, he heard the sound of ping-pong being played from the basement window wells. He then walked through the house, down the stairway to the basement and had almost reached the bottom when he observed Parnigoni facing him, completely naked.[3] Once Parnigoni noticed that J.J. had come down the steps into the basement, he acted surprised, covered his genitals and ran to a nearby bathroom which was five to six feet from the ping-pong table.

Parnigoni was subsequently arrested and charged with two counts of indecent exposure, one as to J.J. and one as to O.J. At the conclusion of a jury trial, he was found guilty of both offenses.[4]

1. The family included O.J., his mother, his father (J.J.) and two younger sisters.

2. The testimony at trial was that Parnigoni had known the family for "three or four" years at the time of the incident.

3. J.J. testified that he was fifteen to twenty feet away from the ping-pong table when he first observed Parnigoni.

4. Parnigoni was sentenced to one year of imprisonment for the count as to O.J., with the execution of the sentence suspended but for six months, and ninety days of imprisonment for the count as to J.J., with the execution of the sentence suspended. The two sentences were imposed consecutive to each other. He was also sentenced to five years of probation

## II

### A.

■ We first address Parnigoni's argument that his convictions for indecent exposure should be vacated because the statute under which he was charged is unconstitutionally vague:

A criminal statute is void on vagueness grounds when it provides no standards by which conduct falling within its scope may be ascertained. Such a statute infringes upon due process rights by failing to provide fair warning of what is prohibited and inviting capricious and arbitrary enforcement by public officials.

*Leiss v. United States,* 364 A.2d 803, 806 (D.C.1976); *see also Parker v. Levy,* 417 U.S. 733, 752, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974) (quoting *Smith v. Goguen,* 415 U.S. 566, 572–573, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974) ("The doctrine [of void for vagueness] incorporates notions of fair notice or warning. Moreover, it requires legislatures to set reasonably clear guidelines for law enforcement officials and triers of fact in order to prevent 'arbitrary and discriminatory enforcement.' ")). When addressing the vagueness doctrine, the Supreme Court has said that "clarity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *United States v. Lanier,* 520 U.S. 259, 266, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997), *quoted in McNeely v. United States,* 874 A.2d 371, 382 n. 14 (D.C.2005). As we set out below, the indecent exposure statute addressed here has had a number of judicial glosses that have clarified its meaning, at least in the context of the facts of this case.

■ The provision utilized to charge Parnigoni's actions with respect to O.J., reads in its entirety:

Any person or persons who shall commit an offense described in subsection (a) of this section, *knowing he or she or they are in the presence of a child under the age of 16 years,* shall be punished by imprisonment of not more than 1 year, or fined in an amount not to exceed $1,000, or both, for each and every such offense.

D.C.Code § 22–1312(b) (2001) (emphasis added). Because of the cross-reference, to understand subsection (b) it is necessary to refer to subsection (a) of section 22–1312. That provision, under which Parnigoni's actions with respect to J.J. were charged, makes it unlawful "for any person or persons to make any obscene or indecent exposure of his or her person." We addressed the meaning of this language in *Duvallon v. District of Columbia,* 515 A.2d 724 (D.C.1986), and held that the language "obscene or indecent exposure of his or her person" makes "the indecent exposure of human genitalia [ ] the offense." 515 A.2d at 728. We have also held: "An exposure becomes indecent when the defendant exposes himself at such a time and place, where as a reasonable man he knows or should know his act will be open to the observation of others." *Peyton v. District of Columbia,* 100 A.2d 36, 37 (D.C. 1953); *see also Hearn v. District of Columbia,* 178 A.2d 434, 437 (D.C.1962). We have further held that in order to be convicted of this offense, a defendant must have intended to do the prohibited act, though "the intent required is only a general one, and need not be directed toward any specific person or persons." *Peyton, supra,* 100 A.2d at 37. On the other hand, we have held that "[o]rdinary acts involving exposure as a result of carelessness or thoughtlessness, particularly when such acts take place within the privacy of one's home, do not in themselves establish the

on each count, to run concurrently with each other.

offense of indecent exposure." *See Selph v. District of Columbia,* 188 A.2d 344, 345 (D.C.1963). Thus, Parnigoni's argument that the indecent exposure statute is unconstitutionally vague is refuted by a longstanding line of cases from this court that have clarified its meaning. For this reason, we reject Parnigoni's argument that the indecent exposure statute is unconstitutionally vague. The statutory construction in each of these cases, moreover, is considered part of the statute for purposes of assessing its vagueness. *Wainwright v. Stone,* 414 U.S. 21, 22, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973) (per curiam) ("The judgment of [ ] courts as to the vagueness or not of a state statute must be made in the light of prior state constructions of the statute.") Because our cases have defined the contours of the statute's application beyond merely its wording, we reject Parnigoni's argument that the indecent exposure statute is unconstitutionally vague.[5]

 Parnigoni also asserts that the indecent exposure statute was not intended to apply to an act committed in private in the presence of a single and consenting person. This is an accurate statement of our law. *See Rittenour v. District of Columbia,* 163 A.2d 558, 559 (D.C.1960); *District of Columbia v. Garcia,* 335 A.2d 217, 224 (D.C.1975). But the argument misses the point. O.J. cannot have consented because he was under the age of sixteen when the events at issue took place; such consent is barred by the statute.

We had occasion to address the effect of a claim of consent by an eleven-year old minor—the same age as O.J.—to a sexual act in *Davis v. United States,* 873 A.2d 1101 (D.C.2005). There, a father was charged with misdemeanor sexual abuse under section 22–3006 of the District of Columbia Code,[6] and based his defense on consent under section 22–3007, which reads: "Consent by the victim is a defense, which the defendant must establish by a preponderance of the evidence to a prosecution under [section 22–3006]." We upheld "the longstanding rule that a child is legally incapable of consenting to sexual conduct with an adult," 873 A.2d at 1105, and noted that "the historical premise of that rule is that children cannot consent 'in a meaningful way,' because they 'do not understand what is happening to them.'" *Id.* (quoting *Williams v. United States,* 756 A.2d 380, 386 (D.C.2000), and *Guarro v. United States,* 99 U.S.App. D.C. 97, 100, 237 F.2d 578, 581 (1956)).

Various provisions of the Anti–Sexual Abuse Act of 1994, *see* D.C.Code §§ 22–3001–3012 (2001), which substantially revised the sex offense laws in this jurisdiction, are also useful to address the issue of whether a child can consent to actions that would otherwise violate the indecent exposure statute. Sections 22–3008 (First Degree Child Sexual Abuse), –3009 (Second Degree Child Sexual Abuse), and –3010 (Enticing a Child) of the District of Colum-

---

5. We note that Parnigoni also poses hypothetical conduct that might be outlawed by our current interpretation of the Indecent Exposure statute, including nudity in school locker rooms, in public pools and in athletic facilities. We decline to address those situations on a factual record that does nothing to enlighten us in that regard. *See Leiss, supra,* 364 A.2d at 807 ("It is a well-settled principle that one to whose conduct a statute clearly applies is not entitled to attack it on the ground that its language might be less likely to give fair warning in some other situation not before the court." (citing *Parker, supra,* 417 U.S. at 756, 94 S.Ct. 2547;) *Gooding v. Wilson,* 405 U.S. 518, 530, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (Burger, C.J., dissenting); *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960)).

6. The facts were that while father and daughter were watching television together, the father exposed his penis and asked his daughter to rub it.

bia Code prohibit child sexual abuse. Section 3011 provides that "[n]either mistake of age nor consent is a defense to a prosecution" under these sections, and section 22–3001 defines a child as "a person who has not yet attained the age of 16 years," *id.* § 22–3001(3), and contains language similar to that of subsection (b) of § 22–1312.

Similarly, the District of Columbia Protection of Minors Act of 1982, *id.* §§ 22–3100–3104 (2001), prohibits sexual performances using minors and defines a minor as "any person under 16 years of age." *Id.* § 22–3101(2). This Act also does not permit consent as a defense to charges arising under it.[7] *Id.* § 22–3104.

■ Finally, the penalty structure of the indecent exposure statute itself refutes the idea that the consent of a child under the age of sixteen can provide a valid defense. The penalty for indecent exposure involving a child under the age of sixteen is punishable by imprisonment of up to a year and a fine of up to $1,000, while the same action involving an adult is punishable by imprisonment of up to ninety days and a fine of up to $300. This disparity in penalty underscores the seriousness with which Congress considered indecent exposure with respect to a child and refutes the idea that "consent" would have trumped "the longstanding rule, reiterated throughout the District of Columbia Code, that a child is legally incapable of consenting to sexual conduct with an adult." *Davis, supra,* 873 A.2d at 1105.

Thus, we conclude that Parnigoni's claim that O.J. consented to the game of naked ping pong, thus consenting to Parnigoni's indecent exposure, must fail.[8]

### B.

■ Parnigoni also argues that his conviction of indecent exposure involving J.J., pursuant to subsection (a) of section 22–1312 of the District of Columbia Code (formerly codified at subsection 22–1112(a)), should be vacated because the evidence was insufficient to show that Parnigoni (1) intended to expose himself to J.J., which he asserts is a necessary element of the crime; and (2) actually exposed his genitalia to him. In reviewing challenges to the sufficiency of the evidence, we view the evidence "in the light most favorable to the government, giving it the benefit of all reasonable inferences," and "defer to the jury with respect to credibility determinations and the weighing of the evidence." *Hartridge v. United States,* 896 A.2d 198, 221–22 (D.C.2006). " 'It is only where the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt that this court can reverse a conviction.' " *Id.* at 222 (quoting *In re M.I.W.,* 667 A.2d 573, 575 (D.C.1995)).

■ With respect to Parnigoni's argument that his conviction should be reversed because he did not intend to expose himself to J.J., as *Peyton, supra,* 100 A.2d 36, makes clear, the law pertaining to inde-

---

7. Indeed, it even outlaws *parental* consent "to the participation of a minor in a sexual performance." D.C.Code § 22–3102(1) (2001).

8. Parnigoni urges us to rule that a showing that the conduct was offensive to someone is required in cases charging indecent exposure based on private conduct, and cites us to the case of *State v. J.O.,* 69 N.J. 574, 355 A.2d 195, 196 (1976), which held that "the proper standard[ ] for ascertaining whether a private-

ly committed act is one of indecent exposure within the meaning of the criminal statute is whether under the circumstances, the conduct is offensive, or has the likelihood of being offensive, to the persons who are present." We decline to follow this suggestion, particularly in the context of this case, where the issue of who was offended involves a child under the age of sixteen.

cent exposure does not require that an accused have a specific intent to expose himself to any particular person. It is sufficient that Parnigoni generally intended to expose himself so as to "draw[ ] attention to his exposed condition," *id.* at 37, and the record supports this finding. Moreover, the evidence showed that Parnigoni suggested the rule that whoever lost a game would have to play the next game naked. Thereafter, upon losing, Parnigoni voluntarily removed all of his clothing and proceeded to play ping-pong completely naked in front of an eleven-year-old boy, an act that was clearly intended to draw attention to his exposed condition. Thus there is no question from Parnigoni's conduct that he intended to expose himself in an unlawful manner, and it is thus immaterial whether or not he intended to expose himself to J.J.

■ There is, however, some question as to whether or not Parnigoni's conduct was sufficiently public as to be prohibited by the indecent exposure statute. Parnigoni was in the basement of a private home when he exposed himself and appeared surprised when he saw J.J. walk into the basement, arguably indicating that Parnigoni intended his behavior to be private and not to be observed by anyone other than O.J., which he contends would not be prohibited by the statute. *See Selph, supra,* 188 A.2d at 345 ("Nudity is not *per se* 'obscene.' It is not illegal for a man to be completely unclothed in his room."). The law in this jurisdiction, however, is not subjective; it requires exposure "at such a time and place where as *a reasonable man* he knows *or should know* his act will be open to the observation of others." *Id.* (emphasis added).

■ In this case, a reasonable man should have known his act would be "open to the observation of others." *Id.* Parnigoni was in another family's home to which several people had access. Moreover, he was in an open part of the home where people gathered to play games and the door to the basement was not closed or locked. Furthermore, he is not protected merely by the fact that he was in a private household. Our law extends to indecent exposure committed both in a public setting and a private one. *Rittenour v. District of Columbia, supra,* 163 A.2d at 559 (D.C.1960) ("[I]n the present law, Congress deleted the requirement that [indecent exposure] be committed in public and, in fact, expressly indicated that the statute covered acts occurring anywhere in the District." (internal quotation marks omitted)). We hold that, given these facts, a reasonable person should have known his or her act would be open to the observation of others. Parnigoni, therefore, is not exempted from the statute because his actions were conducted within a private home because his conduct was sufficiently public to come within the statute.

■ Parnigoni's second argument for the insufficiency of the evidence as to J.J. is that the record does not establish that J.J. observed his genitalia, and that he therefore cannot have been found to have violated section 22–1312(a). As we noted above, it is "the indecent exposure of the comparable portions of the male and female anatomy that constitutes the crime. In other words, the indecent exposure of human genitalia is the offense." *Duvallon v. District of Columbia, supra,* 515 A.2d at 728. In *Duvallon* we concluded that the appellant's exposure of her buttocks and the side of her breast was insufficient exposure to sustain a conviction under section 22–1312. *Id.* at 728.

■ Unlike *Duvallon,* however, there is ample evidence in this case for the jury to have found that Parnigoni exposed his genitals. J.J. testified that Parnigoni was

facing him "completely naked," and that Parnigoni "covered his genitals" after he realized J.J. was in the basement. O.J. also testified that he saw Parnigoni's "whole body except for his legs down," including Parnigoni's "private parts," while they were playing ping-pong. Viewing this evidence "in the light most favorable to the government, giving it the benefit of all reasonable inferences," *Hartridge, supra,* 896 A.2d at 221–222, we conclude that the jury could have reasonably found that Parnigoni exposed his genitalia to J.J. We therefore hold that the evidence is sufficient to support Parnigoni's conviction for indecent exposure as to J.J. pursuant to section 22–1312(a).[9]

Accordingly, for the reasons stated herein, Parnigoni's convictions are hereby

*Affirmed.*

9. While a viable merger issue may have existed as to whether Parnigoni was properly convicted under *both* § 22–1312(a) and (b) when he arguably committed only one criminal act and where § 22–1312(b) appears to be a sentence enhancement rather than a separately punishable offense in addition to § 22–1312(a), he has not raised it in the trial court or on appeal, and so it is not appropriately before us for consideration.