**Sean E. THOMAS, Appellant**

v.

**DISTRICT OF COLUMBIA, Appellee.**

No. 06–CT–1088.

District of Columbia Court of Appeals.

Submitted Feb. 7, 2008.
Decided Feb. 21, 2008.

646

Relinda Louisy, was on the brief for appellant.

Linda Singer, Attorney General, for the District of Columbia at the time the brief was filed, Todd S. Kim, Solicitor General, Rosalyn Calbert Groce, Deputy Attorney General, and Janice Y. Sheppard, Assistant Attorney General, were on the brief for appellee.

Before REID and KRAMER, Associate Judges, and SCHWELB, Senior Judge.

REID, Associate Judge:

After a bench trial, appellant, Sean E. Thomas, was found guilty of driving under the influence of a drug (marijuana), in violation of D.C.Code § 50–2201.05(b)(1)(A)(i)(II) (2001). We affirm.

## FACTUAL SUMMARY

At approximately 7:20 a.m. on July 2, 2005, Officer Candace Drake of the Uniformed Division of the United States Secret Service, was standing outside of her police vehicle at the intersection of 17th and H Streets in the northwest sector of the District of Columbia, when she noticed a woman yelling out of a car stopped at the traffic light. The woman was yelling, "[H]elp me; he has a gun and drugs in the car...." Officer Drake radioed for help, and Officer James Livingston responded to the scene. The two approached the vehicle. Officer Livingston asked Mr. Thomas, seated in the driver's seat, to exit the vehicle. Officer Drake instructed the female passenger, who repeatedly said Mr. Thomas had been drinking and doing drugs, to also get out of the car. Both officers noticed an open Hennessy bottle in the car, ashes in the ashtray, and something that looked like a "joint" with a "leafy, brown-green type substance in it." The joint appeared to have been used. Officer Drake did not smell drugs in the vehicle, but another officer who arrived at the scene said that the vehicle "smell[ed] as if somebody had been smoking in [it]," though he could not discern whether a cigar, cigarette, or marijuana had been smoked. In a subsequent search of the car, ziplock bags containing a leafy, green substance were found. Tests revealed that the substance was marijuana.

Officers Livingston and Drake also noticed odd aspects about Mr. Thomas's condition and behavior. His eyes were bloodshot and glassy. He was sweating profusely, so much so that his clothes were soiled. The amount of sweat was unusual given that the day was not hot or humid. Officer Livingston said Mr. Thomas was perspiring at a rate "consistent with somebody that ran several miles." Mr. Thomas also "did not re-

spond immediately to things" and had to use the door to maintain his balance when he exited the car. And, according to Officer Livingston, his breath smelled of alcohol.

Officer Livingston, who had forty hours of training in field sobriety testing, administered three field sobriety tests, all of which indicated impairment. Only one of these tests, however, was capable of indicating whether Mr. Thomas was under the influence of a drug.[1] Based on his observations and the test results, Officer Livingston concluded that Mr. Thomas was under the influence of alcohol or drugs. Officer Drake, who was trained to identify the symptoms of drug use, made the same determination based on Mr. Thomas's appearance.

After Mr. Thomas was arrested, he was transported to the Office of the United States Capitol Police for a breathalyzer exam and a urinalysis. Two breathalyzer exams indicated that the level of alcohol in Mr. Thomas's blood was zero. Once those tests were completed, the Capitol Police technician attempted to administer the urinalysis, but Mr. Thomas refused to take the exam. He told Officer Livingston, who had been observing the testing, "You got me." Officer Livingston asked, "What do you mean by that?" The officer pressed further, saying, "Well, what do you mean we got you, ... are the ... narcotics or drugs in the car yours?" Mr. Thomas did not respond.

At trial, during the direct examination of Officer Drake, the prosecution attempted to introduce a copy of the Implied Consent Act and the breathalyzer ticket, which showed that Mr. Thomas refused to undergo the urinalysis. The defense objected on the grounds that the documents were hearsay and that they were cumulative, since Officer Livingston had already testified regarding Mr. Thomas's refusal to take the test. The court found the documents were admissible under District law, and, consequently, overruled the objection.

Two days after refusing to undergo the urine test, Mr. Thomas agreed to take it. The urinalysis did not reveal the presence of cocaine, opiates, or PCP in his body. The test was not designed to detect marijuana.

Based on Mr. Thomas's appearance and behavior and the presence of marijuana in the car, the trial court found that Mr. Thomas was driving under the influence of marijuana.

## ANALYSIS

 Mr. Thomas argues that the trial court improperly denied his motion for judgment of acquittal because there was insufficient evidence to allow a reasonable fact finder to conclude beyond a reasonable doubt that he was under the influence of marijuana.[2] We review "a denial of a motion for judgment of acquittal *de novo.*" *Guzman v. United States,* 821 A.2d 895, 897 (D.C.2003). In doing so, we examine the "evidence in the light most favorable to the government, giving full play to the right of the [fact finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact." *Sousa v. United States,* 400 A.2d 1036, 1043 (D.C.1979). "The evidence need not *compel* a finding of

---

1. Officer Livingston testified that the walk and turn and "one leg stance" tests cannot indicate drug impairment but that "there are some clues on the horizontal-gaze nystagmus that are consistent with some narcotics and some anti-depressant drugs."

2. Mr. Thomas also asserts that the trial court's factual findings were clearly erroneous. We see no indication on the record that the court's factual determinations were erroneous.

guilt beyond a reasonable doubt. Instead, the evidence must merely be sufficient to allow a finding of guilt beyond a reasonable doubt by a reasonable fact finder, drawing no distinction between direct and circumstantial evidence." *Guzman, supra,* 821 A.2d at 897. Further, we will not disturb the trial court's findings of fact, unless they are clearly erroneous. *See Davis v. United States,* 564 A.2d 31, 35 (D.C.1989); D.C.Code § 17–305 (2001). After reviewing the evidence, we conclude that there was sufficient evidence from which a reasonable fact finder could conclude beyond a reasonable doubt that Mr. Thomas was guilty of driving under the influence of marijuana.

▆▆▆ D.C.Code § 50–2201.05(b)(1)(A)(i)(II) states, in pertinent part, "No person shall operate ... any vehicle while under the influence of ... any drug." "A person is guilty of [driving under the influence] if he or she is *to the slightest degree* ... less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to handle as powerful and dangerous a mechanism as an automobile with safety to himself and the public." *Karamychev v. District of Columbia,* 772 A.2d 806, 812 (D.C.2001) (internal quotation marks omitted). "[T]he nature of the evidence required to support a conviction for driving under the influence of a drug is not different from the sort of evidence required to support a conviction for driving under the influence of alcohol." *Harris v. District of Columbia,* 601 A.2d 21, 28 (D.C.1991). "In both situations, circumstantial evidence will suffice even though [the evidence] does not specifically quantify the amount of the substance ingested and relate it to the ability to drive." *Id.*

There was ample evidence Mr. Thomas was, "*to the slightest degree,*" less able to "exercise [the] clear judgment and steady

hand necessary" to safely operate a vehicle. *See id.* Trained officers testified that his eyes were bloodshot and glassy and that he sweated profusely on a day that was neither hot nor humid. They also testified that he failed a sobriety test that could indicate possible impairment from narcotics, and, upon exiting his car, leaned on it to maintain his balance. *See Stevenson v. District of Columbia,* 562 A.2d 622, 624 (D.C.1989). Mr. Thomas also experienced difficulty following the instructions of the sobriety tests and failed to "respond to things immediately." *Harris, supra,* 601 A.2d at 28. Further, he refused to undergo the urinalysis and essentially admitted guilt when he said, "You got me." *Karamychev, supra,* 772 A.2d at 813 ("[Appellant's] refusal to take chemical tests at the police station was evidence from which the judge could properly infer consciousness of guilt"). These circumstances led Officers Drake and Livingston, who had been trained to determine whether someone is under the influence of a drug, to conclude that Mr. Thomas was under the influence of alcohol or a drug. In addition, marijuana and a piece of paper that resembled a joint that had been smoked were found in the car, and at least one officer stated that the car smelled as if someone had been smoking in it. Based on this evidence, a trial court could conclude beyond a reasonable doubt that Mr. Thomas was driving under the influence of marijuana.

▆▆▆ Mr. Thomas also contends that the trial court violated his Sixth Amendment right to confront the witnesses against him by admitting the Implied Consent Act ("the Act") and the breathalyzer ticket even though the technician who administered the breathalyzer and advised Mr. Thomas of his rights under the Act did not testify at trial and was not shown to be unavailable. Mr. Thomas further argues

that Officers Drake and Livingston were not competent to testify as to whether he was under the influence of a drug because they did not have the experience or training required to give a rationally based opinion on the issue. Because Mr. Thomas failed to raise these claims below, we review for plain error. *Brawner v. United States*, 745 A.2d 354, 357 (D.C.2000); *Ventura v. United States*, 927 A.2d 1090 (D.C. 2007). Under plain error review, we will not reverse a decision, unless "there was (1) error, (2) that [was] plain, (3) that affect[ed] substantial rights, and (4) the error seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings." *Peay v. United States*, 924 A.2d 1023, 1028–29 (D.C.2007) (citations and internal quotation marks omitted).

Even if the trial court erred in its rulings, Mr. Thomas's arguments cannot withstand plain error analysis because he cannot show that either error affected his substantial rights. To demonstrate that the errors affected his substantial rights, Mr. Thomas must show that there is a reasonable probability the errors had a prejudicial effect on the outcome of his trial. *Thomas v. United States*, 914 A.2d 1, 21 (D.C.2006). The admission of the Implied Consent Act and the breathalyzer ticket without testimony from the administering technician did not prejudice Mr. Thomas because those documents, which showed that Mr. Thomas refused to take the urine test, were cumulative of Officer Livingston's testimony regarding Mr. Thomas's refusal. Moreover, given the testimony and observations of the officers, the government's case was strong.[3] The strength of the government's case also prevents Mr. Thomas from demonstrating that the officers' testimony that he was under the influence of alcohol or drugs affected his substantial rights.

In addition, neither error could have seriously affected the fairness, integrity, or public reputation of the trial proceeding. The admission of the Act and breathalyzer ticket were not unfair because both documents essentially repeated facts already established in Officer Livingston's testimony. Further, Mr. Thomas admits to the accuracy of these facts and failed to raise a valid objection to the admission of the documents at trial. *Thomas, supra*, 914 A.2d at 23 (holding the admission of a DEA chemist's report in violation of the Confrontation Clause did not affect that fairness of the proceeding, in part, because the appellant did not challenge the report's accuracy and failed to raise a valid objection at trial). And due to Mr. Thomas's vigorous challenge of the experience and training of both officers on cross-examination, the introduction of the officer's testimony that Mr. Thomas was under the influence also did not impact the fairness of the proceeding. *See Thomas, supra*, 914 A.2d at 23 (holding the admission of the chemist's report did not affect the trial's fairness partly because "[the appellant] was given a fair opportunity to investigate and challenge the chemist's report, and he could have ... cross-examined the chemist if he doubted her findings, qualifications, or methodology").

The integrity of the trial proceeding was not harmed because "there is no reason whatsoever to believe" that the breathalyzer ticket and Act and the officers' testimony were unreliable. *See id.* The officers' testimony that Mr. Thomas appeared to be under the influence was corroborated by his appearance and behavior, the presence of marijuana and a joint that had

---

**3.** Indeed, at trial Mr. Thomas's counsel argued that the Act and breathalyzer ticket were cumulative of Officer Livingston's testimony.

apparently been smoked in the car, the smell of smoke in the vehicle, and Mr. Thomas's performance on the field sobriety tests. *See id.* (holding the admission of the chemist's report did not impact the integrity of the proceeding partly because other evidence corroborated the report). And, as discussed, Officer Livingston's uncontradicted testimony mirrored the facts stated in the ticket and Act.

"Lastly, given what we have said regarding the fairness of the procedure and the reliability of the evidence, it is difficult to see how the use of the" Act and breathalyzer ticket or the officers' testimony could have impugned the public reputation of the trial proceeding. *Id.* The officers' testimony and the Act and ticket "w[ere] admitted in accordance with the settled law at that time of trial." *Id.* Moreover, "this is not a case in which either the prosecutor or the trial judge was derelict in any way." *Id.*

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*