Dawn ROLEN–LOVE, Appellant,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 07–CT–1219.

District of Columbia Court of Appeals.

Argued June 11, 2009.

Decided June 16, 2009.*

As Amended Sept. 10, 2009.

Justin A. Okezie, Bethesda, MD, appointed by the court, for appellant.

John J. Woykovsky, Assistant Attorney General with whom Peter J. Nickles, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Rosalyn Calbert Groce, Deputy Solicitor General, were on the brief, for appellee.

Before REID and THOMPSON, Associate Judges, and FARRELL, Senior Judge.

PER CURIAM:

Appellant, Dawn Rolen–Love, appeals the trial court's denial of her motion for judgment of acquittal on the charge of indecent exposure.[1] We conclude that

---

* The decision in this case was originally released as a Memorandum Opinion and Judgment on June 16, 2009. It is now being published, with three minor revisions, by order of the court.

1. D.C.Code § 22–1312(a)(2001) provides:

(a) It shall not be lawful for any person or persons to make any obscene or indecent exposure of his or her person, or to make any lewd, obscene, or indecent sexual proposal in the District of Columbia under penalty of not more than $300 fine, or im-

there was sufficient evidence beyond a reasonable doubt to convict Ms. Rolen–Love of indecent exposure and affirm the judgment of the trial court.

### FACTUAL SUMMARY

During Ms. Rolen–Love's trial on October 29, 2007, the government presented testimony from Metropolitan Police Department ("MPD") Officer Jeff Janczyk. Officer Janczyk testified that at approximately 1:17 a.m. on August 2, 2006, he and a fellow MPD officer were on crime patrol in a marked police car. As they pulled alongside a 7–11 located at 218 Cedar Street in the Northwest quadrant of the District of Columbia, the store manager walked out of the store, pointed at Ms. Rolen–Love, and said "stop her." Officer Janczyk exited the car and told Ms. Rolen–Love "ma'am, slow down." Ms. Rolen–Love responded "I'm not a ma'am, I'm a girl." Ms. Rolen–Love lifted up a shirt that she was wearing that came down to her knees past her breast and "began to gyrate around" while standing two feet away from Office Janczyk.[2] At that time, Officer Janczyk could see that "she was wearing no pants or underwear, so her genitals [and breasts] were fully exposed." Ms. Rolen–Love was then placed under arrest for indecent exposure. When pressed by defense counsel on cross-examination about what specifically he saw once Ms. Rolen–Love lifted up her shirt, Officer Janczyk stated that although he is about a foot taller than Ms. Rolen–Love, he saw "her private parts."[3] In response to defense counsel's question "[w]hat part of her private part did you see[,]" Officer Janczyk stated that he saw "her front vaginal area."

After the government rested its case, defense counsel moved for a judgment of acquittal on the charge of indecent exposure. Defense counsel maintained that Ms. Rolen–Love did not expose her genitalia. Defense counsel acknowledged that Officer Janczyk saw "the surface outlines of what the vagina looks like," but he contended that Officer Janczyk "did not see the vagina." Drawing the court's attention to the disparity in height between Officer Janczyk and Ms. Rolen–Love, the distance between the two when Ms. Rolen–Love exposed herself, and the lighting conditions given the time of day, defense counsel claimed that "it would be almost impossible for the officer to see [her vagina]." For Officer Janczyk to see Ms. Rolen–Love's vagina, she would have had to "spread her legs" or Officer Janczyk would "have to take a position other than the standing position." The trial court denied defense counsel's motion, finding that "there is no question that what [Officer Janczyk] described would constitute a violation of the charged statute."

Ms. Rolen–Love testified for the defense. According to Ms. Rolen–Love, the police approached and asked whether she had been using drugs or had in her possession drug paraphernalia. The police then seized her purse and placed her in wire handcuffs. In response to one of the officers calling her a man, Ms. Rolen–Love told the officer that she "wasn't a man, [she] was a girl" and pulled her dress up from the rear while the officers were be-

---

prisonment of not more than 90 days, or both, for each and every such offense.

**2.** On redirect examination, Officer Janczyk explained that Ms. Rolen–Love gyrated around by "[m]oving her hips ... back and forth."

**3.** Officer Janczyk testified that he is 6 foot 2 inches tall and Ms. Rolen–Love is 5 foot 3 inches tall.

hind her. That day, she was wearing a cotton thong.

At the close of the defense's case, defense counsel renewed his motion for judgment of acquittal. The trial court acknowledged that there were two versions of events that occurred the night of Ms. Rolen–Love's arrest, but ultimately found Officer Janczyk's version more credible. The trial court then stated:

> under that version ... if a female lifts her dress and exposes her whole naked body from the front, from above the breast down and the vagina can be seen, even if it's not the interior or the vagina ... and then gyrates, that ... would constitute an obscene or indecent exposure of her person. And thus I ... find her guilty of the charge in the information.

## ANALYSIS

 Ms. Rolen–Love argues that the trial court erred in denying her motion for judgment of acquittal because the government failed to present sufficient evidence beyond a reasonable doubt to convict her of indecent exposure under D.C.Code § 22–1312(a).[4] "We review 'a denial of a motion for judgment of acquittal *de novo.*'" *Thomas v. District of Columbia,* 942 A.2d 645, 648 (D.C.2008) (quoting *Guzman v. United States,* 821 A.2d 895, 897 (D.C.2003)). Where, as here, a defendant has " 'introduce[d] evidence after the denial of [her] motion for a judgment of acquittal made at the close of the government's case[,]'" we consider all the evidence admitted at trial in assessing the defendant's guilt. *Moore v. United States,* 927 A.2d 1040, 1049 (D.C.2007) (quoting *Franey v. United States,* 382 A.2d 1019, 1021 (D.C. 1978)) (footnote omitted). "In doing so, we examine the 'evidence in the light most favorable to the government, giving full play to the right of the [fact finder] to determine credibility, weigh the evidence, and draw justifiable inferences of fact.'" *Thomas,* 942 A.2d at 648 (quoting *Sousa v. United States,* 400 A.2d 1036, 1043 (D.C. 1979)). We will not reverse the judgment of the trial court unless "the government has produced no evidence from which a reasonable mind might fairly infer guilt beyond a reasonable doubt." *Nixon v. United States,* 730 A.2d 145, 148 (D.C. 1999) (quoting *Gayden v. United States,* 584 A.2d 578, 580 (D.C.1990) (internal citations omitted)). "Further, we will not disturb the trial court's findings of fact, unless they are clearly erroneous." *Thomas,* 942 A.2d at 649 (citations omitted). After a review of the record, we conclude that there was sufficient evidence beyond a reasonable doubt to support Ms. Rolen–Love's conviction.

 In *Duvallon v. District of Columbia,* 515 A.2d 724 (D.C.1986), we held that under our indecent exposure statute, "the indecent exposure of human genitalia is the offense." *Id.* at 728. Thus, we have said that to convict a defendant for indecent exposure under D.C.Code § 22–1312(a), the government need only establish that the defendant (1) intentionally exposed her genitalia (2) "at such a time and place, where as a reasonable [person she] knows or should know [her] act will be open to the observation of others." *Parnigoni v. District of Columbia,* 933 A.2d 823, 826 (D.C.2007) (citations and internal quotation marks omitted). In this case, Officer Janczyk testified that when he asked Ms. Rolen–Love to stop, she lifted up her shirt thereby exposing "her

---

4. Ms. Rolen–Love does not contend that she did not have fair notice that her behavior of lifting her dress (so that the front of her vagina was exposed) violated the District's indecent exposure statute. *See Commonwealth v. Arthur,* 420 Mass. 535, 650 N.E.2d 787, 790 (1995).

front vaginal area" to him. Ms. Rolen–Love does not dispute that she acted intentionally or that she acted at a time or place where she knew her act would be open to the observation of others. Rather, she argues that Officer Janczyk's "testimony was not clear ... or specific enough" to establish that she exposed her genitalia because he did not testify that he saw her "vagina, uterus, uterine tubes, and ovaries." We are unpersuaded by Ms. Rolen–Love's argument.

The female genitalia are not solely composed of internal reproductive organs. As the government correctly notes, the female genitalia are composed of external and internal organs. *Schmidt's Attorney's Dictionary of Medicine and Word Finder* Vol. 2. G–36, L–2, M–164 (1992). The external organs "include the mons veneris, ... [and] the labia majora...." *Id.; see also Stedman's Medical Dictionary* 2143 (28th ed.2006) (defining the external genitalia of the female.). Based on Officer Janczyk's testimony credited by the trial court, that he saw Ms. Rolen–Love's "front vaginal area," we are satisfied that the government has produced sufficient evidence beyond a reasonable doubt from which a reasonable mind might fairly infer that Ms. Rolen–Love exposed, and Officer Janczyk saw, her genitalia. *See Nixon, supra,* 730 A.2d at 148.

Accordingly, for the foregoing reasons, we affirm the judgment of the trial court.

*So ordered.*